IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN MORTGAGE CONSULTANTS INC., an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>OPUS CAPITAL MARKETS CONSULTANTS, LLC, an Illinois limited liability corporation, VERO SOLUTIONS, INC., an Illinois corporation, JOSEPH ANDREA, an individual, JENNIFER LABUD, an individual, and ANTHONY GUIDICI, an individual,<br><br>Defendants. | Case No. 1:07-cv-7055<br><br>**Honorable William J. Hibbler**<br><br>**Magistrate Michael T. Mason** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff American Mortgage Consultants, Inc. ("AMC"), by its undersigned attorneys, responds to and opposes Defendants' Motion to Dismiss as follows.

I. **SUMMARY OF THE OPPOSITION**

The Defendants' Motion to Dismiss is mistakenly premised on the notion that Defendant Vero Solutions, Inc. ("Vero") and not AMC is the owner and beneficial interest holder of copyright rights in the software in question. The allegations of AMC's Complaint refute this notion conclusively and demonstrate that AMC is the sole owner of the copyright, via both a contract between the parties and a confirmatory order entered by the Circuit Court of Lake County. AMC also has sufficiently alleged direct and contributory and vicarious infringement of its copyright by the various Defendants.

The Defendants' motion to dismiss is nothing more than a desperate attempt to avoid having to answer the Complaint, as the Defendants' cannot in good faith deny the material allegations of the Complaint and avoid liability for their infringing acts. The Court should deny the Defendants' fallacious and misguided motion to dismiss in its entirety.

II. **STATEMENT OF MATERIAL FACTS**

The following facts are derived from AMC's Complaint. AMC is a residential mortgage due diligence and consulting firm that is primarily engaged in the business of evaluating and rating residential mortgages for potential purchase by major investment banking clients. (¶ 2) To facilitate its review of such mortgage pools, in 2001 AMC began developing a computer software system known as TIGRE and colloquially within AMC as TIGRE I. (¶21) On December 8, 2003, AMC was granted a copyright registration for TIGRE I. (¶23)

Subsequent to the completion of TIGRE I, AMC began developing an updated computer-based software system known colloquially within AMC as TIGRE Web-Enabled (or TIGRE II). (¶25) TIGRE Web-Enabled was based on, derived from, and incorporated pre-existing material from TIGRE I. (¶ 26) In an effort to expedite completion and implementation of TIGRE Web-Enabled, AMC sought the services of and, on or about June 18, 2003, entered into an agreement with, Defendants Guidici and Vero to reverse-engineer the database structure of and migrate the pre-existing TIGRE I application from one database platform to another, and to enable remote access to the application, to be known as TIGRE Web-Enabled. (¶40) Guidici's first "inkling" that he might have an ownership interest in the TIGRE

2

software was in November 2004, when he discussed that issue with his lawyers. Prior to that time he had never mentioned to anyone that he thought he owned the TIGRE Web-enabled software.[1] On December 14, 2004, without notice to or the knowledge of AMC, Vero was granted a copyright registration for TIGRE Web-enabled, which he referred to as Loan Review and Mortgage Compliance System ("LRMCS"). (¶¶ 43, 25) On January 20, 2005, AMC terminated its relationship with Guidici and Vero and terminated the June 18, 2003 agreement. (¶ 44)

Shortly thereafter, on February 22, 2005, AMC's President, defendant Andrea, and Senior Vice President – Compliance, LaBud, resigned from AMC without prior notice, and formed defendant Opus. (¶¶ 48-54). Prior to their resignation from AMC, on or about February 20, 2005, defendants Vero and Opus executed a licensing agreement for Opus' non-exclusive use of TIGRE Web-enabled, as well as a professional services agreement pursuant to which Vero would develop a software system substantially similar to, and derived from, TIGRE Web-Enabled, to be known as "OpusFirst." (¶ 56) All Defendants subsequently acted on the licensing and professional services agreements described above, in that Opus, Andrea, and LaBud used and continue to use TIGRE Web-Enabled in the conduct of Opus' business and Guidici and Vero developed OpusFirst, which Opus, Andrea, and LaBud subsequently used and continue to use in the conduct of Opus' business. (¶57)

---

[1] The facts contained in this sentence are derived from Defendant Anthony Guidici's November 3, 2006 deposition testimony in the Lake County case, relevant portions of which are attached to the attached Declaration of Anthony S. Hind as Exhibit A. The cited testimony from Mr. Guidici's transcript comes from the non-confidential portion of that transcript. *See* Ex. A, p. 175.

On February 8, 2007, in litigation pending between these same parties, the Circuit Court of Lake County, Illinois ordered that Defendants Guidici and Vero had agreed to assign and had indeed assigned to AMC, *inter alia*, all copyright and other rights, title and interest in and to TIGRE Web-Enabled, pursuant to the June 2003 agreement between AMC on one hand, and Guidici and Vero on the other. (¶ 45) On December 10, 2007, AMC also registered TIGRE Web-Enabled in accordance with the Copyright Act by submitting the appropriate and sufficient deposit materials, an application for copyright registration, and all other required materials with the Register of Copyrights. (¶47)

III. **LEGAL STANDARD**

  A. **Rule 12(b)(1)**

Where a defendant challenges the sufficiency of the allegations of subject matter jurisdiction in a Rule 12(b)(1) motion to dismiss, a district court must accept as true all well-pled allegations of a complaint, drawing all reasonable inferences in the plaintiff's favor. *See United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir.1996). If the motion denies the truth of the jurisdictional allegations, a court may weigh the evidence in order to determine whether jurisdiction exists. *See Bd. of Trs. of Pipe Fitters' Welfare Fund Local 597 v. Adams,* 1998 WL 259543, No. 97 C 5592, at *2 (N.D.Ill. May 7, 1998).

The plaintiff bears the burden of demonstrating subject matter jurisdiction. *Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir.1999). When a defendant moves for dismissal pursuant to Rule 12(b)(1), the plaintiff must support its allegations with competent proof of jurisdiction. *See Thomson v. Gaskillwsa,* 315 U.S. 442, 446 (1942).

4

Competent proof consists of "proof to a reasonable probability that jurisdiction exists." *See Target Market Publishing, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1142 (7th Cir.1998). A "district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

### B.  Rule 12(b)(6)

Federal courts have notice-pleading requirements, not fact-pleading. *Veazey v. Communications & Cable of Chicago*, 14 F.3d 850, 854 (7th Cir. 1999). The federal rules follow the notice pleading approach and require only a "short and plain statement of the claim showing that the pleader is entitled to relief. *Id.*; Rule 8(a)(2). "All that's required to state a claim in a complaint filed in federal court is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). A claim must be sustained if any facts that might be established within those allegations would permit a judgment for the plaintiff. *Veazey*, 14 F.3d at 854.

## IV.  ARGUMENT

### A.  The Court Has Jurisdiction Over the Subject Matter of This Action.

#### 1.  Plaintiff properly alleges ownership of the copyright and thus has standing to maintain this action.

To establish a claim for copyright infringement, a claimant must allege (a) ownership of a valid copyright and (b) copying of original constituent elements of the work. *Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equipment Distributors and Northwest Nexus, Inc.*, 983 F.Supp. 1167, 1172 (N.D.Ill. 1997). While registration is not a

5

condition of copyright protection, it is necessary before an infringement suit may be filed. *Automation By Design, Inc. v. Raybestos Products Co.*, 463 F.3d 749, 753 (7th Cir. 2006). However, there is no requirement in the Seventh Circuit that a plaintiff actually attach the certificate of registration of a copyright to its complaint to provide evidence of ownership. *See Adams v. Jackson,* 218 F.Supp.2d 1006, 1012 (N.D.Ind. 2002). [2]

Here, AMC's pleadings demonstrate ownership, and the new assertions contained in the Defendants' Motion do not establish otherwise.

>   a. *Defendants transferred all rights, title, and interest in TIGRE Web-Enabled to AMC.*

"The rights comprised in a copyright may be subdivided and transferred. 17 U.S.C. 201(d)(2)." *Automation*, 463 F.3d at 753. A transfer of copyright ownership is an "*assignment,* mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license." 17 U.S.C. 101 (emphasis added). Parties are free to transfer copyrights from one owner to another entity, as long as the transfer complies with the writing requirement of Section 204 of the Copyright Act. *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003).

Here, AMC has alleged that Defendants Guidici and Vero entered into a June 18, 2003 agreement with AMC, assigning to AMC all copyright and other rights,

---

[2] At the time of filing its Complaint in this matter, Plaintiff had not received from the Register of Copyrights the certificate of registration that issued as a result of the application filed on December 10. Subsequent to filing the Complaint, Plaintiff did receive the registration which has an effective date of registration of December 10, 2007. A true and accurate copy of the certificate of registration is attached as Exhibit B to the Hind Declaration.

title, and interest in and to TIGRE Web-Enabled. Complaint, ¶¶40, 45. A true and accurate copy of the June 18, 2003 Agreement is attached as Exhibit C to the Hind Declaration. The terms of the June 18, 2003 Agreement, drafted by Guidici and Vero, include the following: "All work product created during this project is the property of AMC." See Exhibit B, p. 9. Defendants have not refuted the existence of this contract or the provision indicating that AMC owns all work product, and they cannot.

The Circuit Court of Lake County, Illinois confirmed that Vero assigned to AMC all such rights in the court's February 8, 2007 Order. See Complaint, Exhibit B. Thus, by operation of Vero's assignment, U.S. Copyright Registration No. TX 6-083-227 is owned by AMC, despite the recitation of Vero as the author on the registration papers. See Complaint, Exhibit A. Pursuant to Sections 201 and 204 of the Copyright Act, Vero was free to transfer the rights comprised in the copyright for TIGRE Web-Enabled to AMC, and it did so in writing.[3]

      b. *Plaintiff properly registered TIGRE Web-Enabled in December 2007.*

On December 10, 2007 (four days prior to filing the Complaint), AMC registered TIGRE Web-Enabled with the Registrar of Copyrights in accordance with the Copyright Act. See Complaint, ¶47; see also Hind Declaration, Exhibit B. Thus, if the Court were to find there were any flaw or defect in Vero's assignment/transfer of its 2004 registration of TIGRE Web-Enabled to AMC, such that AMC could not

---

[3] The Court should ignore the Defendants' red herring quibble with AMC's use of the term "TIGRE Web-Enabled" at FN 2 of its Motion to Dismiss. (See Motion, p. 3). That term is used interchangeably with the terms "TIGRE II" and "LRMCS" and describes the exact same software system owned by AMC. See Complaint, ¶¶25, 43.

rely on Vero's assignment, then AMC's 2007 registration provides the necessary proof of AMC's ownership of the rights comprised in the copyright of TIGRE Web-Enabled. Whether via (a) the transfer of rights by Vero or (b) Plaintiff's December 2007 registration, Plaintiff is the owner of the rights comprised in the copyright for TIGRE Web-Enabled and has standing to pursue its case before this Court.

> **2. The state court's March 1, 2007 Order does not operate to prevent Plaintiff from pursuing this action.**

Before discussing what Lake County Circuit Court Judge Mullen's March 1, 2007 order[4] actually did do, it is helpful to consider the wide array of what it did *not* do:

- It did not vacate or withdraw Judge Mullen's February 8, 2007 order acknowledging and confirming Defendants' transfer of, *inter alia*, all rights in TIGRE Web-Enabled to Plaintiff;

- It did not prohibit or forbid Plaintiff from bringing a copyright suit in federal court to pursue redress for the Defendants' infringement;

- It did not order that Plaintiff must wait for the Lake County case to resolve before bringing a suit in federal court for the Defendants' infringement;

- It did not order that Vero or Guidici is the owner of any rights to TIGRE Web-Enabled.

Those are the many things that Judge Mullen's March 1, 2007 order certainly did not do, but which the Defendants argue or imply to the contrary. (Motion, pp. 3-4). The list of the things that the March 1 order actually did do is much more compact.

Judge Mullen's March 1, 2007 order merely stayed the enforcement of certain terms of the February 8, 2007 order *within the context of the state court lawsuit to*

---

[4] Exhibit 1 to Defendants' Motion.

*prevent delaying resolution of that action by an appeal*. It did no more. It did not affect AMC's ability to maintain a copyright infringement claim before this Court because, obviously, the federal district courts have original and exclusive jurisdiction in copyright cases. 28 U.S.C. §1338.

In their Motion, the Defendants ignore the fact that the June 18, 2003 contract between AMC and Vero, *not the state court order*, is the document that first establishes AMC's ownership of the rights comprised in the copyright for TIGRE Web-Enabled. The February 8, 2007 order acknowledges and confirms AMC's ownership. Defendants would have the Court believe that AMC's assertion of ownership hinges exclusively on the operation of the February 8, 2007 order. That is incorrect, and the staying of certain provisions of that order within the context of the state court lawsuit has no effect on AMC's ability to pursue its federal copyright claims here.

### 3. Plaintiff's December 10, 2007 registration is valid.

Contrary to the Defendants' mischaracterizations, Section 411(a) of the Copyright Act requires only that registration of the copyright claim be made before instituting an infringement action, not that a plaintiff "possess the copyright registration certificate." Consistent with this requirement, §410 of the Copyright Act provides that "[t]he effective date of a copyright registration is the day on which an application, deposit, and fee,…, have all been received in the Copyright Office." 17 U.S.C. §410(d).

Pursuant to §410(d), AMC's copyright registration has an effective date of December 10, 2007, which is four (4) days prior to the date on which AMC filed its Complaint. See Complaint, ¶47 and Exhibits C and D thereto. The Defendants

therefore cannot claim that AMC is maintaining this lawsuit inadequately on the basis of an application to register copyrights in the software. Because AMC owns (a) the software in question and (b) registration of copyrights in the software by virtue of the June 18, 2003 Agreement, the Court should reject the Defendants' argument that the lawsuit is inadequately premised on a copyright application.

### B. Plaintiff Alleges Direct and Contributory Infringement and Vicarious Liability by Defendants Opus, Andrea, and LaBud (the "Opus Defendants").

Section 501(a) of the Copyright Act provides, in part, that, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106… is an infringer of the copyright." Among other rights, §106 conveys the exclusive rights to reproduce or make copies of and to produce derivative works based on the software. 17 U.S.C. §106(1) – (2).

In this case, ¶¶ 56-60 and 62-65 of the Complaint allege sufficient facts to establish direct, contributory, and vicarious liability for copyright infringement under the Copyright Act. The Opus Defendants ignore these allegations in arguing that AMC has not sufficiently alleged infringement.[5]

#### 1. Direct infringement by the Opus Defendants.

To set forth a *prima facie* claim of direct infringement, a plaintiff must allege ownership of the allegedly infringed material and violation by the infringers of at least one of the exclusive rights granted to copyright holders. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Here, as described above, AMC has alleged ownership of all rights to TIGRE Web-Enabled, thus satisfying the first

---

[5] Defendants Vero and Guidici do not make such arguments.

10

element of direct infringement. AMC also has alleged that the Opus Defendants copied and used AMC's software, violating the exclusive rights granted to AMC as the copyright holder. Complaint, ¶¶56-60, 62-65. Under the notice pleading requirements of this Court, Plaintiff has alleged direct infringement by all Defendants, including the Opus Defendants.

### 2. Contributory Infringement by the Opus Defendants.

A defendant is liable for contributory infringement when it, while aware of the primary infringer's activity, induces, causes, or materially contributes to the infringing conduct of another. *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F.Supp.2d 877, 883 (N.D.Ill. 2005). A claim for contributory copyright infringement has three elements: (1) direct infringement by a primary infringer, (2) defendant's knowledge of the infringement, and (3) defendant's material contribution to the infringement. *Id.* (citing *Marobie-Fl, Inc. v. Nat'l Ass'n of Fire Equip. Distribs. & Nw. Nexus, Inc.*, 983 F.Supp. 1167, 1178 (N.D.Ill.1997)). As stated by the court in *Monotype:*

> The knowledge element for contributory copyright infringement is met in those cases where a party has been notified of specific infringing uses of its technology and fails to act to prevent ... such infringing uses [in the future], or willfully blinds itself to such infringing uses.

*Id.* at 886.

Here, AMC indisputably has alleged direct infringement by Guidici and Vero as the "primary infringers" for purposes of this contributory infringement analysis (Defendants do not argue to the contrary), thus satisfying the first element. AMC also has alleged that the Opus Defendants knew of the Vero Defendants' infringement, thus meeting the second element. See Complaint, ¶¶62-64. Lastly,

AMC alleges facts demonstrating the material contribution of the Opus Defendants to the infringement by the primary infringers. Paragraphs 56-60 and 62-65 of the Complaint depict the Opus Defendants' successful efforts to license TIGRE Web-Enabled from the Vero Defendants, thus both inducing and facilitating the Vero Defendants' infringement.

The Opus Defendants conveniently ignore these allegations in arguing that AMC's Complaint contains no "meaningful, non-conclusory allegations" pertaining to the Opus Defendants' contributory infringement. Plaintiff's allegations are sufficient under federal notice-pleading standards and state a claim for contributory infringement by the Opus Defendants. Any further detail regarding the Defendants' infringing activities can and will be revealed during discovery in this matter.

In sum, as co-owners of Defendant Opus (Complaint, ¶55), Andrea and Labud, with full knowledge of AMC's ownership of the software, entered into a license agreement with Vero and Guidici for installation[6] and use of the AMC software on Opus computers.  Complaint, ¶¶56-57, 62.  As owners of the start-up Opus, Andrea and LaBud directly participated in the copying and installation of the AMC-owned software on Opus computers and otherwise supervised and controlled same as well as the use of the AMC software by Opus to operate its business. Indeed, the conspiracy to deprive AMC of its exclusive rights in the software and to defraud AMC by soliciting customers and employees (a subject of the Lake County litigation between these same parties, not this lawsuit) has been admitted by

---

[6] The act of installing software onto a computer results in a copy of the software being made on the computer on which the software will reside and be used. *See, Microsoft Corp. v. Sellers,* 411 F.Supp.2d 913, 920 (E.D.Tenn. 2006).

12

Defendants Vero and Guidici. *See,* January 7, 2005 e-mail from Anthony Guidici to attorney Donald Levine, produced during the course of the Lake County litigation, a copy of which is attached to the Hind Declaration as Exhibit D.

The Opus Defendants' argument that AMC has failed to plead sufficient allegations to establish that they are liable for direct and contributory copyright infringement (or inducement) and otherwise vicariously liable for willful infringement is without merit. AMC has pled sufficient facts to sustain claims under each theory of infringement, and the Court should deny the Defendants' Motion in its entirety.

## V. CONCLUSION

For the foregoing reasons, Plaintiff American Mortgage Consultants, Inc. respectfully requests that the Court deny the Defendants' Motion in its entirety and grant AMC such other and further relief as it deems just.

Dated: March 20, 2008                    By:    /s/       Anthony S. Hind

> Thomas J. Ramsdell (6209798)
> Anthony S. Hind (6257797)
> Carl E. Myers (6270329)
> THOMAS J. RAMSDELL & ASSOCIATES
> One East Wacker Drive
> Suite 2020
> Chicago, Illinois 60601
> Tel:    312.267.0071
> Fax:    866.220.7644
>
> *Counsel for Plaintiff American Mortgage Consultants, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN MORTGAGE CONSULTANTS INC., an Illinois Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OPUS CAPITAL MARKETS CONSULTANTS, LLC, an Illinois limited liability corporation, VERO SOLUTIONS, INC., an Illinois corporation, JOSEPH ANDREA, an individual, JENNIFER LABUD, an individual, and ANTHONY GUIDICI, an individual,<br><br>　　　　Defendants. | Case No. 1:07-cv-7055<br><br>**Honorable William J. Hibbler**<br><br>**Magistrate Michael T. Mason** |

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused a copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** and all documents referred as attached thereto, to be served upon the attorneys listed below electronically via the Court's CM/ECF system on March 20, 2008:

　　Trisha M. Cole: tcole@synergylawgroup.com,
　　nmcdonald@synergylawgroup.com

　　Joseph L Kish: jkish@synergylawgroup.com,
　　nmcdonald@synergylawgroup.com

　　Bartly Joseph Loethen: bart@synergylawgroup.com,
　　nmcdonald@synergylawgroup.com


　　　　　　　　　　　　　　　　/s/　　　Anthony S. Hind

14